IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

KASEY CARLSON,

                Plaintiff,

v.

CHIPPEWA VALLEY TECHNICAL COLLEGE,

                Defendant.

OPINION & ORDER

16-cv-840-jdp

---

Plaintiff Kasey Carlson is a nursing instructor at defendant Chippewa Valley Technical College. In 2014, CVTC placed Carlson on a special assignment, which by contract was supposed to last through 2017. Carson contends that CVTC violated the FMLA by removing her from the assignment prematurely in 2015, shortly after she took two weeks of medical leave. Carlson also asserts state law claims for breach of contract and breach of implied covenant of good faith and fair dealing for terminating her employment contract.

CVTC moves for summary judgment on the ground that it removed Carlson for reasons unrelated to her FMLA leave, an issue on which Carlson bears the burden of proof for all of her FMLA claims. The court's role is not to second-guess CVTC's personnel decisions, but to determine whether Carlson had adduced evidence from which a reasonable jury could find that CVTC terminated Carlson from the special assignment because she took FMLA leave. The court concludes that no reasonable jury could make this finding on the basis of the summary judgment record here, so the court will grant summary judgment on Carlson's FMLA claims. The court will decline to exercise supplemental jurisdiction over Carlson's state law claims and dismiss them without prejudice.

Carlson has also moved to take the deposition of Kristin Woghan "to preserve her testimony and for use at trial." Dkt. 58. Because that motion is not related to CVTC's summary judgment motion, the court will deny the motion for leave to depose Woghan as moot.

UNDISPUTED FACTS

The following facts are undisputed unless otherwise noted.

Carlson worked as a full-time nursing instructor at CVTC. In November 2014, CVTC assigned Carlson to a special assignment, the Augmented Reality Integration Simulation Education (ARISE) project. The project's goal was to integrate augmented reality into learning simulations for students studying nursing or other medical disciplines. While she worked on the project, Carlson held the position of simulation-curriculum specialist, which required her to "develop and compile simulation scenarios and associated augmented reality content." Dkt. 45, ¶ 53; *see also* Dkt. 46-2, at 30. Carlson and CVTC entered into a "Special Assignment Agreement" and agreed that her assignment on the ARISE project would last from November 2014 through August 2017. Dkt. 39-1, at 1.

In September 2015, Carlson requested a two-week FMLA leave for a medical reason, and CVTC approved her request. She returned and continued her work on the ARISE project on a part-time basis on October 1, 2015. She began working full-time on the ARISE project on October 15, 2015. CVTC removed her from the project on October 27, 2015, but she continued on as a full-time instructor.

The court will discuss the facts related to CVTC's reasons for its decision to remove Carlson from the ARISE project in the analysis section.

ANALYSIS

Under the FMLA, an employee may take leave up to 12 weeks in a year. 29 U.S.C. § 2612(a); *King v. Ford Motor Co.*, 872 F.3d 833, 840 (7th Cir. 2017). After an employee takes FMLA leave, the employer must restore the employee to the same or equivalent position she had when her FMLA leave began. 29 U.S.C. § 2614(a)(1); 29 C.F.R. § 825.214. The employer may not interfere with an employee's right to take leave and it may not retaliate against an employee for opposing a practice prohibited by the FMLA. 29 U.S.C. § 2615(a), (b); 29 C.F.R. § 825.220(c).

In this case, Carlson asserts claims of both "interference" and "retaliation," but her theory under both claims is the same, which is that CVTC removed her from her assignment because she took FMLA leave. And both sides assume that the dispositive issue on summary judgment is the reason that CVTC removed Carlson from her assignment. In other words, if no reasonable jury could find that CVTC removed Carlson because she took leave, the court must grant CVTC's motion.

CVTC offers three reasons for removing Carlson from the project: (1) at the time of her removal, Carlson had completed only four of the 25 augmented-reality scenarios that were supposed to be completed during the first year of the ARISE project; (2) Carlson disregarded a directive from her supervisor, Margaret Dickens; and (3) Carlson had difficulty working with her colleagues. Even if the court assumes that there are genuine disputes about the first two reasons, CVTC is entitled to summary judgment because no reasonable jury could find the third reason is pretextual. *Simpson v. Beaver Dam Cmty. Hospitals, Inc.*, 780 F.3d 784, 798 (7th Cir. 2015) (general rule in employment discrimination cases is that plaintiff must show that *each* of employer's stated reasons is pretextual).

The parties agree that several of Carlson's colleagues complained about difficulty working with her. For example, one colleague assigned to the project from the marketing department, Melissa Wilson, complained to Dickens and Pam Haller, the director of marketing, that Carson was "sarcastic, condescending, and difficult to work with." Dkt. 44, ¶ 91. Another marketing employee, Sara Pertz, eventually replaced Wilson, but Pertz, too, complained to Dickens that Carlson was condescending, did not treat her with respect, and had unreasonable expectations. Dkt. 44, ¶ 95.

Carlson also had problems working with Dickens. In June 2015, Dickens instructed Carlson to stop working from home and to start working on the campus. Dickens testified at her deposition that Carlson became "openly hostile" toward her in response to her instruction to work on campus. Dkt. 26 (Dickens Dep. 59:2–15); *see also* Dkt. 44, ¶ 66. Dickens also testified that Carlson made sarcastic comments while standing in the back at a meeting when Dickens discussed various matters about the project with other CVTC employees. *Id*. at Dkt. 26 (Dickens Dep. 59:25–60:19). And after Carlson returned from her FMLA leave and Dickens met with Carlson to discuss the project, Carlson got angry simply because Dickens (the supervisor on the project) had changed the script for one of the scenarios without telling Carlson. Dkt. 44, ¶ 121.

Lisa Colombo-Arendt, a coach Dickens assigned to Carlson to help her with various skills, including people skills, reported in a performance summary that Carlson had problems with working with others:

> Overall, my summary of Kasey is that she is much more comfortable working alone in a very authoritative environment; with her controlling all the dimensions. She communicates in an adversarial way and she is deficient in interacting with others professionally.

Dkt. 44, ¶ 132. Colombo-Arendt prepared her performance summary after Carlson's return from FMLA leave, and CVTC's management relied on it in deciding to remove Carlson.

Carlson contends that Colombo-Arendt observed Carlson's interactions with Dickens at only two meetings, *id.*, which the court takes to mean that Colombo-Arendt lacked the personal knowledge to make the statements above. But Colombo-Arendt met with Carlson weekly, coached her on how to work with her colleagues, and received reports that her colleagues had complained about her. Dkt. 16 (Carlson Dep. 68:17–19, 70:24–71:1, 74:15–21); Dkt. 33 (Colombo-Arendt Dep. 60:6–20, 82:1–3); Dkt. 44, ¶ 74. Colombo-Arendt also attended the October 15, 2015 meeting where she observed Carlson being angry at Dickens. Dkt. 44, ¶¶ 117, 121. Thus, Colombo-Arendt had personal knowledge of how Carlson interacted with her colleagues and supervisor.

The facts about Carlson's interpersonal problems are not genuinely disputed, but Carlson contends that it was not the real reason that CVTC removed her from the ARISE project. She cites the following grounds in support of that view: (1) the timing of removal is suspicious because "the vast majority" of the performance issues occurred before Carlson's FMLA leave, Dkt. 40, at 20; (2) CVTC expected her to work while on FMLA leave; (3) Dickens directed Carlson to spend all of her time on the ARISE project and wanted other employees to devote more time to the project, suggesting that Dickens may have been angry at Carlson for taking leave, *id.* at 21; and (4) CVTC's stated reasons for her removal were unreasonable, untrue, or unsubstantiated, *id.* at 7–22. The court will consider each reason in turn.

1. Timing

Suspicion timing is generally not enough to overcome a motion for summary judgment. *Cung Hnin v. TOA (USA), LLC*, 751 F.3d 499, 508 (7th Cir. 2014) ("Under most

circumstances, suspicious timing alone does not create a triable issue on causation."). In any event, Carlson's problems persisted even after her FMLA leave. First, Pertz complained about Carlson's working reducing after the leave. Second, as noted above, Carlson got angry at Dickens for changing the script for one of the scenarios without telling her, even though amending the script would have been an "easy fix." Dkt. 44, ¶ 132 and Dkt. 16 (Carlson Dep. 81: 16–18). Third, Carlson's coach prepared a performance summary outlining Carlson's problem after her FMLA leave. These examples show that Carlson's inability to work with others continued even after her FMLA leave.

## 2. Expectation to work while on leave

To support her allegation that CVTC expected her to work while on leave, Carlson quotes a bullet point from the performance summary prepared by Colombo-Arendt:

> My main focus for Kasey was to keep the project moving forward. . . . Kasey struggles with creatively thinking through issues, strategizing ways to keep things moving and connecting with people. Examples include · · ·
>
> - [Carlson] [d]id not develop a plan of continuation of the project while on FML. We developed a plan to have writers to continue to work while she was gone and could review upon her return.

Dkt. 20-3, at 2. This passage shows not that CVTC expected Carlson to work during her leave but that CVTC expected her to *plan* for her leave. It would make no sense for Carlson to develop "a plan of continuation" when she was already on leave. But it would be reasonable to expect an employee taking leave to determine in advance how her responsibilities could be reassigned or delegated while she was away. Thus, this passage provides no evidence that CVTC was hostile toward Carlson's medical leave.

6

### 3. Dickens's wish to devote more staff time to ARISE project

As to Dickens's motive, Carlson's allegation is speculative. Carlson does not cite any evidence that Dickens or anyone else resented Carlson for taking two weeks of leave. It is not reasonable to infer a retaliatory motive simply because Dickens wanted to devote more resources to the project.

### 4. Factual basis for CVTC's concerns

As to the reasonableness and accuracy of CVTC's concerns about Carlson's interpersonal skills, the court has already discussed that issue. And whether Carlson's interpersonal problems were so severe that they justified her removal is not the question. The court's "role is not to make suggestions to managers on how to deal with employees more fairly or effectively—we leave that to a company's personnel department." *Kohls v. Beverly Enterprises Wisconsin, Inc.*, 259 F.3d 799, 806 (7th Cir. 2001). Carlson has adduced no evidence that CVTC's concerns with her performance were not sincere.

### 5. Other arguments

Carlson's remaining arguments do not require extended discussion. Carlson contends that the director of human resources Burgau and Dickens told Brenda Scheurer, Carlson's former supervisor, that the reason for disciplining Carlson was that she lied and had a negative student review, but what Burgau and Dickens told Scheurer is hearsay. Carlson also contends that some emails sent to human resources complaining about Carlson during her removal process are hearsay and lack foundation, but the court has not relied on those emails.

Carlson's other points are all irrelevant. It does not matter whether Carlson's previous supervisor before Dickens thought Carlson performed well; whether Dickens acknowledged that removing Carlson from the project would delay its completion; whether CVTC had

7

concerns that Carlson would sabotage the project or that Carlson was a flight risk; whether Carlson said that she did not want to work with the marking department; or whether the missing notes from Colombo-Arendt in Carlson's personnel file raise suspicion. Even if true, these observations do not show that CVTC removed Carlson from the project because she took FMLA leave, which is what Carlson bears the burden of showing.

In sum, Carlson adduces no evidence that CVTC interfered with her FMLA rights or retaliated against her for exercising those rights, and there is no genuine dispute that CVTC removed Carlson from her position for a reason related to her FMLA leave. The court will grant summary judgment on her FMLA claims.

When a district court dismisses all federal claims, the dismissal creates a presumption against exercising supplemental jurisdiction, and the court will dismiss the state-law claims without prejudice. *Hagan v. Quinn*, 867 F.3d 816, 830 (7th Cir. 2017). Neither side explains why the court should retain supplemental jurisdiction, so the court will dismiss Carlson's state-law claims without prejudice.

ORDER

IT IS ORDERED that:

6. Defendant Chippewa Valley Technical College's motion for summary judgment, Dkt. 17, is GRANTED as to plaintiff Kasey Carlson's claims under the Family and Medical Leave Act.

7. Carlson's remaining state-law claims are dismissed without prejudice.

8. Carlson's motion for leave to take a deposition, Dkt. 58, is DENIED as moot.

9. The clerk of court is directed to enter judgment in favor of CVTC and close the case.

Entered May 11, 2018.

BY THE COURT:

/s/
_____
JAMES D. PETERSON
District Judge